# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **SCOTTSDALE INSURANCE COMPANY,** | ) | Civil Action No. |
| | ) | 16-11435-FDS |
| Plaintiff and | ) | |
| Counter-Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **TIMOTHY BYRNE and** | ) | |
| **ROBERT BOLTON,** | ) | |
| | ) | |
| Defendants and | ) | |
| Counter-Claimants. | ) | |
| | ) | |

## MEMORANDUM AND ORDER ON
## <u>CROSS-MOTIONS FOR SUMMARY JUDGMENT</u>

**SAYLOR, J.**

This is an insurance coverage dispute, essentially involving whether an insurer was obligated to defend an investment fund accused of mismanagement and self-dealing.

Wellesley Advisors Funds was, apparently, an investment advisor. It purchased a Business and Management Indemnity Policy from plaintiff Scottsdale Insurance Company. Defendants Timothy Byrne and Robert Bolton are co-chairs of the Board of Trustees for the Plumbers and Pipefitters Local 51 Pension and Annuity Funds (the "Pension Funds").

The Pension Funds invested in WARF Realty Fund I, LLC ("WARF"), an investment fund of Wellesley Advisors. WARF mismanaged the investments and engaged in self-dealing, precipitating a law suit alleging negligence and an ERISA violation. Scottsdale declined to defend WARF, citing various coverage exclusions. WARF subsequently went into receivership and did not defend the suit; the court eventually entered a default judgment against it for

approximately $5 million.

The Pension Funds then requested that Scottsdale pay the judgment (at least up to the coverage limit) pursuant to the insurance policy it had issued to Wellesley Advisors, which Scottsdale declined to do. Scottsdale now seeks a declaratory judgment stating that it had no duty to defend or indemnify WARF, and the Pension Funds have counterclaimed for the amount of the default judgment. The parties have cross-moved for summary judgment.

The dispute principally concerns three exclusions under the policy, which govern the scope of Scottsdale's duties. For the following reasons, the Court finds that coverage was not clearly excluded, and Scottsdale had a duty to defend. Accordingly, plaintiff's motion for summary judgment will be denied, and defendants' motion for partial summary judgment will be granted.

## I. Background

The following facts are as set forth in the record and appear to be undisputed.

### A. Factual Background

Wellesley Advisors Funds was, apparently, an investment adviser located in Massachusetts. Wellesley Advisors created a real-estate investment fund called Wellesley Advisors Realty Fund I, LLC ("WARF"), which was organized as a limited liability company. (Kessler Aff. Ex. A ¶ 11).

On June 7, 2005, the Board of Trustees of the Pension Funds approved a $5 million investment in WARF. (*Id.* ¶ 13). WARF used the funds to invest in real property in Massachusetts and Rhode Island. (*Id.* ¶ 14). One such investment was "Stone House," a hotel

resort property in Little Compton, Rhode Island. (*Id.* ¶ 15).[1] WARF improperly collected the hotel's revenues as management fees and failed to make necessary mortgage payments on the property. (*Id.* ¶ 20). In February 2014, the successor-in-interest to the bank holding the mortgage filed suit in the Rhode Island Superior Court to recover $5.6 million in damages. (*Id.*). It appears that WARF had also failed to make tax payments on various property investments. (*Id.* ¶ 22). Because of WARF's mismanagement, Realty Fund I failed, and the Pension Funds lost the entirety of their $5 million investment. (*Id.*).

In 2013, Scottsdale Insurance Company had issued a Business and Management Indemnity Policy to Wellesley Advisors Funds. (Zartman Aff. Ex. A at 1). The policy was effective from November 15, 2013, to November 15, 2014, and had a coverage limit of $3 million. (*Id.*).[2] On November 6, 2014, the parties entered into Endorsement No. 26, which extended the policy's effective period one month to December 15, 2014. (*Id.* at 50).

The policy provided coverage for certain losses that Wellesley Advisors or other "Insureds" were obligated to pay.[3] Under the section titled "Management Insureds and Company Coverage," subsection (F), titled "Settlement and Defense," states as follows:

> It shall be the duty of the Insurer and not the duty of the Insureds to defend any Claim. Such duty shall exist even if any of the allegations are groundless, false or fraudulent. The insurer's duty to defend any Claim shall cease when the Limits of Liability have been exhausted by the payment of Loss including Costs, Charges, and Expenses.

(*Id.* at 18). The term "Claim" is defined in subsection B(1)(b) as encompassing "[a] civil

---

[1] Other investments included a residential condominium project in Newport, Rhode Island, called the "Eastbourne Lodge," (Kessler Aff. Ex. A ¶ 18), and a housing development in North Attleborough, Massachusetts. (*Id.* ¶ 19).

[2] Wellesley Advisors paid a premium of $64,937 for the policy. (Zartman Aff. Ex. A at 1).

[3] It does not appear to be disputed that WARF is an insured under the policy, although it was purchased in the name of Wellesley Advisors.

3

proceeding against any Insured seeking monetary damages or nonmonetary or injunctive relief, commenced by the service of a complaint or similar pleading. (*Id.* at 10). The term "Loss" is defined in subsection (B)(8) as including "damages, judgments, settlements, pre-judgment or post-judgment interest awarded by a court, and Costs, Charges and Expenses incurred by [WARF or other Insureds] . . . ." (*Id.* at 11).

Subsection (C)(1), titled "Exclusions Applicable to All Insuring Clauses," states that Scottsdale shall not be liable for losses attributable to various causes. (*Id.* at 13). As relevant here, there are three potentially applicable exclusions.

The first is the "ERISA Exclusion." Subsection (C)(1)(d) provides that Scottsdale shall not be responsible for covering losses attributable to:

> [A]ny actual or alleged violation of the responsibilities, obligations or duties imposed by [the] Employee Retirement Income Security Act of 1974, as amended, or any rules or regulations promulgated thereunder, or similar provisions of any federal, state or local statutory or common law.

(*Id.* at 14).

The second is the "Intentional Conduct Exclusion." Subsection (C)(1)(f) provides that Scottsdale shall not be responsible for covering losses attributable to:

> [A]ny dishonest, deliberately fraudulent or criminal act of an Insured; provided, however this exclusion [ ] shall not apply unless and until there is a final judgment against such Insured as to such conduct; or
>
> [T]he gaining of any profit, remuneration or financial advantage to which any Management Insureds were not legally entitled; provided, however this exclusion [ ] shall not apply unless and until there is a final judgment against such Management Insureds as to such conduct.

(*Id.*).

The third exclusion, as identified in Endorsement No. 21, is "the rendering or failure to render Professional Services" (the "Professional Services Exception"). (*Id.* at 43). The phrase

4

"Professional Services" is defined as:

> [S]ervices as a real estate broker or agent, multiple listing agent, real estate appraiser, title agent, title abstractor or searcher, escrow agent, real estate developer, real estate consultant, property manager, real estate inspector, or construction manager. Such services shall include, without limitation, the purchase, sale, rental leasing or valuation of real property; the arrangement of financing on real property; or any advice proffered by an Insured in connection with any of the foregoing.

(*Id.*).

### B. Procedural Background

On November 10, 2014, Byrne and Bolton, as trustees of the Pension Funds, filed a complaint against WARF in this court for negligence and violation of ERISA (the "underlying complaint"). The case was assigned to Judge Talwani. *See Byrne v. Wellesley Advisors Realty Fund I, LLC*, No. 14-cv-14124-IT. Two days later, on November 12, 2014, Byrne and Bolton wrote a letter to Scottsdale notifying it of the pending suit. (Defs. Ex. D). WARF also notified Scottsdale of the suit on November 14, 2014. (Defs. Ex. E). It appears that at some point over the next three weeks, Scottsdale orally informed WARF that it would not defend the suit.

On December 1, 2014, the Plymouth Superior Court entered an order appointing a receiver for WARF. (Kessler Aff. Ex. B). The next day, WARF wrote a letter to Scottsdale asserting that the claims brought against it were "not excluded" from its policy coverage and that Scottsdale "owe[d] WARF a duty to defend and to indemnify for any loss." (Defs. Ex. F). In particular, WARF denied that ERISA was applicable because it was "not a fiduciary of the pension fund." (*Id.*). Scottsdale replied on December 30, 2014, reiterating its previous statement that it would not defend the suit. (Defs. Ex. G).

On February 4, 2015, WARF's court-appointed receiver filed a motion to stay the action. (Kessler Aff. Ex. C). Judge Talwani granted the stay, which was lifted on July 29, 2015. (*Byrne*

5

*v. Wellesley Advisors Realty Fund I, LLC*, No. 14-cv-14124-IT, Docket Nos. 13, 19).

The receiver ultimately opted not to defend the lawsuit. (Kessler Aff. Ex. E). On October 15, 2015, Byrne and Bolton moved for default judgment. Judge Talwani granted default judgment and reasonable costs and attorney's fees on November 25, 2015, and entered a total judgment of $5,005,422.12 against WARF.

On January 14, 2016, Byrne and Bolton served a demand notice on Scottsdale, requesting that it pay the entirety of the coverage amount (again, the coverage limit is $3 million). (Defs. Ex. I). Scottsdale denied that request on February 10, 2016. (Defs. Ex. J). Byrne and Bolton reiterated their demand on March 1, 2016, and Scottsdale affirmed its denial on March 14, 2016. (Defs. Exs. K, L).

On May 15, 2016, WARF assigned any right, title, and interest in claims it held against Scottsdale Insurance to Byrne and Bolton. (Defs. Ex. M).

Scottsdale filed this action for a declaratory judgment on July 8, 2016. Byrne and Bolton filed a counterclaim alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of the Massachusetts consumer-protection statute, Mass. Gen. Laws ch. 93A.

The parties have cross-moved for summary judgment. Scottsdale seeks summary judgment on all claims and counterclaims, and Byrne and Bolton seek summary judgment on counts 1 and 2 of their counterclaims, which allege breach of contract for Scottsdale's failure to defend WARF and failure to pay the claim, respectively.

## II. Legal Standard

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.,* 950 F.2d 816,

822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir. 1990)).

Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational fact finder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted). In evaluating a summary judgment motion, the court indulges all reasonable inferences in favor of the nonmoving party. *See O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir. 1993). When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (quotations omitted). The nonmoving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256-57.

## III. <u>Analysis</u>

### A. <u>General Insurance Policy Construction</u>

In Massachusetts, the interpretation of an insurance contract is generally a question of law. *Home Ins. Co. v. Liberty Mut. Fire Ins. Co.*, 444 Mass. 599, 601 (2005). Courts are to "construe the words of the policy according to the fair meaning of the language used, as applied to the subject matter." *Jacobs v. U.S. Fid. & Guar. Co.*, 417 Mass. 75, 76 (1994) (citation omitted). "Moreover, where the words of an insurance contract are plain and free from ambiguity[,] they must be construed in their usual and ordinary sense." *Id.* at 77 (internal quotation marks and citation omitted). However, any ambiguity is resolved in favor of the

insured party. *Hazen Paper Co. v. U.S. Fid. & Guar. Co.*, 407 Mass. 689, 700 (1990).

Generally, an insurance company "owes a duty to defend [the insured] if the allegations in the underlying lawsuit are reasonably susceptible to an interpretation that they state a claim covered by [the] policy." *Scottsdale Ins. Co. v. Torres*, 561 F.3d 74, 77 (1st Cir. 2009). "Conversely, there is no duty to defend a claim that is excluded from coverage." *Id.* However, exclusions are to be read narrowly, and an insurance company bears the burden of establishing that an exclusion applies. *Peterborough Oil Co., Inc. v. Great Am. Ins. Co.*, 397 F. Supp. 2d 230, 237 (D. Mass. 2005).

### B. Whether an Exclusion Applied

A duty to defend is triggered when the facts as alleged in the relevant complaint, and as known or readily knowable by the insurer, "are reasonably susceptible of an interpretation that states or roughly sketches a claim covered by the policy terms." *Billings v. Commerce Ins. Co.*, 458 Mass. 194, 200 (2010). The relevant facts need not "specifically and unequivocally" make out a claim that falls within the insurance coverage, but need only show "a possibility" that the liability is within the coverage. *Id.* at 200-01. "The process is not one of looking at the legal theory enunciated by the pleader but of envisaging what kinds of losses may be proved as lying within the range of the allegations of the complaint, and then seeing whether any such loss fits the expectation of protective insurance reasonably generated by the terms of the policy." *Id.* at 201 (citation and internal quotation marks omitted). However, when the relevant allegations "lie expressly outside of the policy coverage and its purpose, the insurer is relieved of the duty to investigate or defend the claimant." *Id.* (citation and internal quotation marks omitted).

As relevant here, Scottsdale had a duty to defend if the claims against WARF did not fall within at least one of three exclusions: the ERISA Exclusion, the Intentional Conduct Exclusion,

or the Professional Services Exclusion.  Each will be addressed in turn.

### 1. The ERISA Exclusion

Count 2 of the underlying complaint alleged an ERISA violation.  Specifically, it stated that WARF "engaged in self-dealing" and "breached its fiduciary responsibility [to the Pension Funds] in violation of ERISA."  (Kessler Aff. Ex. A ¶¶ 29-30).  This clearly falls within the ERISA Exclusion, which releases Scottsdale of any obligation to defend WARF against

> any actual or alleged violation of the responsibilities, obligations or duties imposed by [the] Employee Retirement Income Security Act of 1974, as amended, or any rules or regulations promulgated thereunder, or similar provisions of any federal, state or local statutory or common law.

(Zartman Aff. Ex. A at 14).

Scottsdale also contends that the ERISA Exclusion barred coverage for "the entire complaint filed in the underlying action, not simply count 2."  (Pl. Mem. in Supp. at 11).  Count 1 of the underlying complaint asserted a claim of negligence against WARF; however, Scottsdale contends that because the introductory paragraph to the complaint stated, "[t]his is an action under [ERISA]," (Kessler Aff. Ex. A ¶ 1) the entirety of the underlying complaint proceeded "under the umbrella of ERISA" (Pl. Mem. in Supp. at 11).  Scottsdale has not offered any case law in support of that proposition, and in any event, its argument ignores the section of the introductory paragraph that states the underlying action arose "from [WARF's] *negligence* in failing to properly invest the [Pension] Funds' money in several real estate investments." (Kessler Aff. Ex. A ¶ 1) (emphasis added).  Therefore, although the ERISA Exclusion's plain language meant that Scottsdale had no duty to defend WARF as to count 2 of the underlying complaint, the exclusion did not extend to count 1.

### 2. The Intentional Conduct Exclusion

Next, Scottsdale contends that the Intentional Conduct Exclusion excludes coverage for

9

WARF's losses on either the negligence or ERISA claims in the underlying complaint. The exception states that plaintiff will not provide coverage for:

> [A]ny dishonest, deliberately fraudulent or criminal act of an Insured; provided, however this exclusion [ ] *shall not apply unless and until there is a final judgment* against such Insured as to such conduct; or
>
> [T]he gaining of any profit, remuneration or financial advantage to which any Management Insureds were not legally entitled; provided, however this exclusion [ ] *shall not apply unless and until there is a final judgment* against such Management Insureds as to such conduct.

(Zartman Aff. Ex. A at 14) (emphasis added). Scottsdale reasons that because the underlying complaint alleged that WARF "engaged in self-dealing by retaining investment income from the properties for its own use," it falls within the exclusion. (*See* Kessler Aff. Ex. A ¶ 26).

However, the text of the Intentional Conduct Exclusion specifies that it does not apply "unless and until there is a final judgment" against the insured party. (Zartman Aff. Ex. A. at 14). When this exclusion is read in conjunction with the subsection titled "Settlement and Defense," it is clear that it would apply only after judgment was entered against the insured to relieve the insurer of any duty to indemnify. Therefore, this exclusion did not absolve plaintiff of the duty to defend WARF in the first instance.

### 3. The Professional Services Exclusion

Finally, Scottsdale contends that the Professional Services Exclusion applies. As noted, the exclusion stated that plaintiff was not liable for losses relating to any claim "alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving the rendering or failure to render Professional Services." (Zartman Aff. Ex. A at 43). Again, the phrase "Professional Services" is defined as:

> [S]ervices as a real estate broker or agent, multiple listing agent, real estate appraiser, title agent, title abstractor or searcher, escrow agent, real estate developer, real estate consultant, property manager, real estate inspector, or

10

construction manager. Such services shall include, without limitation, the purchase, sale, rental leasing or valuation of real property; the arrangement of financing on real property; or any advice proffered by an Insured in connection with any of the foregoing.

(*Id.*).

The question is thus whether the negligence claim in the underlying complaint arose out of WARF's rendering of such "Professional Services." Any ambiguity must be construed against the insurer, so as to narrow the exception and provide coverage. *Vappi & Co. v. Aetna Cas. & Sur. Co.*, 348 Mass 427, 431 (1965) ("Exclusions from coverage are to be strictly construed."). "In determining whether an omission or activity falls within the scope of a professional services exclusion, courts generally look to the nature of the conduct under scrutiny." *Camp Dresser & McKee, Inc. v. Home Ins. Co.*, 30 Mass. App. Ct. 318, 323 (1991).

The negligence claim alleged that (1) WARF "leverage[d] its real estate portfolio in excess of the appraised value of the properties"; (2) negligently "fail[ed] to pay real estate taxes owed"; (3) negligently "manag[ed] the Fund I LLC properties by using income from The Stone House for its own management fees"; and (4) "engaged in self-dealing by retaining investment income from the properties for its own use." (Kessler Aff. Ex. A ¶¶ 23-26). In substance, it was a claim that WARF mishandled the investment by overborrowing, taking money for its own purposes, and failing to pay taxes. Such actions appear to go well beyond property management, as that term is commonly understood. At the very least, it is ambiguous whether in fact all of WARF's purported misconduct stemmed from the "arrangement of financing on real property" and "the services of a property manager," as plaintiff suggests. (Pl. Mem. in Supp. at 14).[4]

Thus, on its face, the negligence claim was "reasonably susceptible of an interpretation

---

[4] The negligence claim also encompasses claims that WARF engaged in faulty recordkeeping, made investment choices that were unsuitable for the Pension Funds, and breached its fiduciary duties.

11

that states or roughly sketches a claim covered by the policy terms." *Billings*, 458 Mass. at 200; *see also GRE Ins. Group v. Metropolitan Boston Housing Partnership, Inc.*, 61 F.3d 79, 85 (1st Cir. 1995) (finding that various negligence claims, when liberally construed, fell outside a professional services exclusion); *Jefferson Ins. Co. of New York v. National Union Fire Ins. Co. of Pittsburgh*, 42 Mass. App. Ct. 94, 103 (1997). Accordingly, Scottsdale had a duty to defend WARF on the negligence claim. In addition, because it had "a duty to defend any of the underlying counts in the complaint," it should have defended the entire underlying lawsuit. *Liberty Mutual Ins. Co. v. Metropolitan Life Ins. Co.*, 260 F.3d 54, 63 (1st Cir. 2001).

In short, Scottsdale owed WARF a duty to defend, and it breached the insurance contract by refusing to do so. Therefore, Scottsdale's motion for summary judgment will be denied, and defendants' motion for partial summary judgment as to counts 1 and 2 of their counterclaims will be granted.

Presumably, defendants will be awarded the amount of the coverage limit ($3,000,000), which is less than the judgment in the underlying lawsuit ($5,005,422.12). *See id.* ("[[T]he general rule under Massachusetts law is that if the insurer fails to defend the lawsuit, it is liable for all defense costs and (assuming policy coverage) the entire resulting judgment or settlement, unless liability can be allocated among covered and uncovered claims.").[5] The parties shall file motions concerning the form of judgment within 14 days of this memorandum and order, or by March 15, 2018.

---

[5] The default judgment award in the underlying lawsuit can be found at *Byrne v. Wellesley Advisors Realty Fund I, LLC*, No. 14-cv-14124-IT, Docket No. 27.

## IV. Conclusion

For the foregoing reasons, plaintiff's motion for summary judgment is DENIED, and defendants' motion for partial summary judgment is GRANTED. The parties are ordered to file any motions concerning the form of the judgment no later than March 15, 2018.

**So Ordered.**

Dated:  March 1, 2018

/s/  F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge