# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY, ) | Civil Action No. |
| ) | 16-11435-FDS |
| Plaintiff and ) | |
| Counter-Defendant, ) | |
| ) | |
| v. ) | |
| ) | |
| TIMOTHY BYRNE and ) | |
| ROBERT BOLTON, ) | |
| ) | |
| Defendants and ) | |
| Counter-Claimants. ) | |

## MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR CLARIFICATION AND/OR RECONSIDERATION AND DEFENDANTS' MOTION FOR JUDGMENT ON PARTIAL FINDINGS

**SAYLOR, J.**

This is an insurance coverage dispute involving whether an insurer was obligated to defend an investment fund accused of mismanagement and self-dealing. Wellesley Advisors Funds was an investment advisor for the investment fund WARF Realty Fund I, LLC ("WARF"), in which the Plumbers and Pipefitters Local 51 Pension and Annuity Funds (the "Pension Funds") had invested. Defendants Timothy Byrne and Robert Bolton are co-chairs of the Board of Trustees of the Pension Funds.

Wellesley purchased an insurance policy on behalf of WARF from plaintiff Scottsdale Insurance Company. WARF's alleged mismanagement and self-dealing precipitated a lawsuit alleging negligence and an ERISA violation. Scottsdale declined to defend WARF, citing various coverage exclusions. WARF then went into receivership and did not defend the suit,

leading to a default judgment against it for $5,005,422.12.

In this action, Scottsdale sought a declaratory judgment stating that it had no duty to defend or indemnify WARF, and defendants counterclaimed for the amount of the default judgment, alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of the Massachusetts consumer protection statute, Mass. Gen. Laws ch. 93A.[1] Scottsdale moved for summary judgment, and defendants cross-moved for partial summary judgment on their breach of contract counterclaims.

On March 1, 2018, the Court granted defendants' motion for partial summary judgment and denied Scottsdale's motion for summary judgment, finding that Scottsdale breached the insurance contract by refusing to defend WARF. In its memorandum and order, the Court suggested that it would award defendants the amount of the coverage limit ($3,000,000) and directed the parties to file motions "concerning the form of judgment" by March 15, 2018.

Scottsdale has now moved for clarification and/or reconsideration of the memorandum and order. In support of its motion, Scottsdale contends that the Court failed to address the substance of defendants' bad-faith claims, and that because those claims remain outstanding, judgment cannot issue. Defendants have also moved for Scottsdale to pay the entire judgment in the underlying action. For the reasons set forth below, the Court will grant Scottsdale's motion for reconsideration and deny defendants' motion for payment of the entire judgment.

I.  **Motion for Reconsideration**

    A.  **Legal Standard**

District courts have "substantial discretion and broad authority" to grant a motion for reconsideration pursuant to Fed. R. Civ. P. 59(e). *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d

---

[1] On May 15, 2016, WARF assigned any right, title, and interest in claims it held against Scottsdale to defendants.

76, 81 (1st Cir. 2008). A motion for reconsideration will be granted upon a showing of (1) a "manifest error of law," (2) new evidence, or (3) a misunderstanding or other error "not of reasoning but apprehension." *Id.* at 82. Rule 59(e) motions cannot be used to "advance a new argument that could (and should) have been presented prior to the district court's original ruling." *Cochran v. Quest Software, Inc.*, 328 F.3d 1, 11 (1st Cir. 2003). Nor is a Rule 59(e) motion an appropriate means to "repeat old arguments previously considered and rejected." *Nat'l Metal Finishing Co., Inc. v. Barclays American/Commercial, Inc.*, 899 F.2d 119, 123 (1st Cir. 1990).

**B.      Analysis**

Plaintiff correctly notes that the Court's memorandum and order only granted partial summary judgment to defendants on Counts 1 and 2 of their counterclaims. Accordingly, defendants' bad-faith claims (Counts 3-6) remain outstanding, and entry of final judgment is inappropriate until those claims are resolved. *See* Fed. R. Civ. P. 54(b).[2] The Court erred in failing to address the bad-faith claims, and reconsideration is therefore warranted.

Counts 3 and 4 allege breach of the implied covenant of good faith and fair dealing. (Ans. ¶¶ 37-46). Under Massachusetts law, a covenant of good faith and fair dealing is implied in every contract. *UNO Restaurants, Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004). The covenant provides that "neither party shall do anything that will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract." *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 471 (1991). The implied covenant may not, however, be invoked to create rights and duties not contemplated by the provisions of the contract or the contractual relationship. *UNO Restaurants*, 441 Mass. at 385; *AccuSoft Corp.*

---

[2] Plaintiff had previously moved to sever and stay the bad-faith claims. (Docket No. 18). The Court denied the motion on March 29, 2017. (Docket No. 22).

*v. Palo*, 237 F.3d 31, 45 (1st Cir. 2001).

Counts 5 and 6 allege unfair and deceptive conduct in violation of Mass. Gen. Laws ch. 93A. (Ans. ¶¶ 47-62). "Conduct is unfair or deceptive if it is 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness' or 'immoral, unethical, oppressive, or unscrupulous.'" *Cummings v. HPG Int'l Inc.*, 244 F.3d 16, 25 (1st Cir. 2001) (quoting *PMP Assoc. Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 596 (1975)). In addition, the plaintiff must show "an injury or loss" and a "causal connection between the defendant's deceptive act or practice and the plaintiff's injury." *Gorbey ex rel. Maddox v. Am. Journal of Obstetrics and Gynecology*, 849 F. Supp. 2d 162, 165 (D. Mass. 2012).

In their summary judgment briefs, the parties agreed that the disposition of the bad-faith claims turned on whether plaintiff's conduct in declining to defend WARF in the underlying litigation and subsequent refusal to pay on the policy was based on a "reasonable or plausible interpretation of the policy." *Peterborough Oil Co., Inc. v. Great Am. Ins. Co.*, 397 F. Supp. 2d 230, 244 (D. Mass. 2005). Here, plaintiff's interpretation of the applicable exclusions was ultimately incorrect, but it was not unreasonable. For example, a letter mailed to WARF's counsel on December 30, 2014, parsed the policy language and provided relevant case law in an effort to justify why plaintiff was not obligated to defend the underlying suit. (Defs. Ex. G). Similar letters were mailed to WARF's counsel on February 10 and March 14, 2016. (Defs. Ex. J, L).

Defendants have offered no evidence of plaintiff's purported bad faith beyond the decisions themselves not to defend the suit and provide indemnification. Indeed, the Court's earlier memorandum and order was predicated in large part on the proposition that policy ambiguities are construed in favor of the insured party. *See Hazen Paper Co. v. U.S. Fid. &*

*Guar. Co.*, 407 Mass. 689, 700 (1990). "In such circumstances, an insurer's refusal to defend, even if ultimately determined to be wrong, does not support a claim under [Mass. Gen. Laws 93A]." *Polaroid Corp. v. Travelers Indem. Co.*, 414 Mass. 747, 754 (1993). The Court similarly concludes that there was no breach of the implied covenant of good faith and fair dealing. Accordingly, summary judgment on the bad-faith claims will be granted to plaintiff.

## II. **Motion for Entry of Judgment**

Defendants have also moved for entry of judgment requiring plaintiff to pay the entire amount of the judgment in the underlying suit, $5,005,422.12, plus post-judgment interest. In support, they note that "the general rule under Massachusetts law is that if the insurer fails to defend the lawsuit, it is liable for all defense costs and (assuming policy coverage) the entire resulting judgment or settlement, unless liability can be allocated among covered and uncovered claims." *Liberty Mutual Ins. Co. v. Metropolitan Life Ins. Co.*, 260 F.3d 54, 63 (1st Cir. 2001). They contend that liability in the underlying suit could not be allocated between covered and uncovered claims. (Defs.' Mot. at 5-6).[3]

As a general proposition, "[w]hen an insurer breaches its duty to defend, the insured is entitled to contract damages." *N.E. Envtl. Techs. Corp. v. Am. Safety Risk Retention Grp., Inc.*, 810 F. Supp. 2d 390, 396 (D. Mass. 2011) (citing *Liquor Liab. Joint Underwriting Ass'n of Mass. v. Hermitage Ins. Co.*, 419 Mass. 316, 323 (1995)). If the insurer's refusal to defend was made in "good faith," as is here, "there is no reason not to apply normal contract principles." *Polaroid Corp.*, 414 Mass. at 763 (citing *Ficara v. Belleau*, 331 Mass. 80, 82-83 (1954)). "Contract damages are 'those that cannot be reasonably prevented and arise naturally from the breach, or which are reasonably contemplated by the parties.'" *N.E. Envtl. Techs. Corp.*, 810 F.

---

[3] As explained in the Court's March 1, 2018 memorandum and order, in the underlying suit the ERISA claim was not covered, but the negligence claim possibly was.

5

Supp. 2d at 396 (quoting *Polaroid Corp.*, 414 Mass. at 762). Had plaintiff defended the underlying suit and lost, its liability to WARF would have been capped at the $3 million policy limit. Defendants, as WARF's assignees, cannot recover any more than that amount.

To the extent defendants rely on *Boyle v. Zurich Am. Ins. Co.*, 472 Mass. 649 (2015), that case is inapposite. In *Boyle*, the defendant insurance company's sole defense was that the duty to defend was not triggered because the insured never notified it about the pending suit. *Id.* at 654. However, the plaintiffs had separately alerted the company about the suit. *Id.* In awarding the plaintiffs the entirety of the judgment in the underlying suit, an amount well in excess of the policy coverage limit, the Supreme Judicial Court focused its analysis on the fact that the insurance company had failed to establish prejudice stemming from the insured's failure to notify. *Id.* at 658-59. By contrast, the parties in this suit simply disputed whether coverage existed in the first instance.[4] Accordingly, defendants' recovery is limited to $3 million. *See Polaroid Corp.*, 414 Mass. at 763 ("When a contract is breached, the injured party is entitled to receive what would have been obtained if there had been no breach; the injured party is not entitled to recover more.").

### III. Conclusion

For the foregoing reasons, plaintiff's motion for reconsideration is GRANTED, and defendants' motion for entry of judgment for the entire amount of the underlying judgment is DENIED. Defendants will be awarded the policy limit of $3 million, plus post-judgment interest at the statutory rate dating from November 25, 2015, the date of the judgment in the underlying suit.

---

[4] Plaintiff also contends that unlike the insurance company in *Boyle*, it (1) did not ignore communications from the insured, (2) was not provided notice of the motion hearing for the entry of default judgment in the underlying suit, and (3) had no impact on the insured's being placed into receivership.

6

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated: May 2, 2018  United States District Judge